CLIFTON MFG. CO. v. UNITED STATES FIDELITY AND GUARANTY CO.

1. EVIDENCE — DECLARATIONS—ACCOUNTS—CONDUCT—INTENT.—Where one is charged with fraud or dishonesty in the management of funds entrusted to his care, it is proper to show the intent with which he acted by his declarations, conduct and accounts in regard thereto.

2. CAUSE OF ACTION—NONSUIT—JURY.—GUARANTEE indemnified against fraud or dishonesty of one member of firm in using its funds in purchasing cotton for it under written contract with firm, shown guarantor before execution of bond, upon proof of misapplication of guarantee's funds, and that bonded individual was the active member of the firm, and has received guarantee's funds, has

cause of action against guarantor, and case should have been sub-
mitted to jury.

Before Buchanan, J., Spartanburg, March term, 1899.
Reversed.

Action on indemnity bond by Clifton Manufacturing Co.
against United States Fidelity and Guaranty Co.  From
judgment of nonsuit, plaintiff appeals.

*Messrs. Simpson & Bomar,* for appellant, cite: *Error to
rule out declarations of indemnitee:* 9 S. C., 152; 2 Hill, 313;
3 McC., 225, 412.  *Defendant cannot now deny its con-
tract:* 52 S. C., 228.  *Where there is evidence showing
breach of bond nonsuit was improper:* 38 S. C., 377.

*Messrs. Carlisle & Carlisle,* contra, cite: *It appearing the
guarantee had no contract with indemnitee nonsuit was pro-
per:* 25 S. C., 357; 6 Adol. & Ell., 514; 17 Ill., 365; 14
Ency., 1163, n. 7; 10 Ency., 413, n. 4.

*Messrs. Glenn & McFadden,* also contra, cite: *On same
point as colleagues:* 24 Ency., 749; 34 L. R. A., 861; 148
Ill., 413.

April 1, 1901.  The opinion of the Court was delivered
by

Mr. Justice Pope.  This action was begun 14th Febru-
ary, 1898.  Its object was to recover the sum of $1,000 by
the plaintiff against the defendant under its contract
whereby it agreed, for a valuable consideration, to make
good and reimburse to the plaintiff any loss that might be
sustained by the plaintiff during the year beginning January
1st, 1898, and terminating 31st December, thereafter, of
money or other securities by any act of fraud or dishonesty
with reference to the funds committed to his charge, or of
any improper use of said funds, or any other act other than
a mere error of judgment or injudicious exercise of discre-

9—60

tion on the part of one W. F. Gilliam, who was then under a contract in writing, under the firm name of Jones & Gilliam (W. T. Jones being the other member of said firm of Jones & Gilliam), with the plaintiff, to purchase cotton for the plaintiff at Carlisle, S. C., with funds furnished to said firm by the plaintiff. The contract of the plaintiff with the said firm of Jones & Gilliam was very carefully and circumspectly drawn, and signed by both parties thereto. The contract of the defendant, whereby it agreed to save harmless the said plaintiff for any default of duty as above set out to the plaintiff by the said W. F. Gilliam, was very carefully drawn. Both of said contracts were put in evidence. It was in evidence that and before the defendant executed its contract to indemnify the plaintiff from any default of duty by W. F. Gilliam to the plaintiff, said defendant was shown the contract of said W. F. Gilliam, of the firm of Jones & Gilliam, with the plaintiff, so that it (the defendant) was put in full possession of said contract with the plaintiff with Jones & Gilliam as to using plaintiff's funds to purchase cotton. W. F. Gilliam had exclusive control and management of the affairs of said firm of Jones & Gilliam at Carlisle, S. C. That said W. F. Gilliam received sundry sums of money from the plaintiff and purchased sundry lots of cotton. That on the 17th February, 1898, the plaintiff learned that said Jones & Gilliam had not been true to their duty to the plaintiff, and when the sum of $443.81, which should have been on hand of plaintiff's funds in the hands of Jones & Gilliam, was demanded by the plaintiff, it was not forthcoming; but that in the ascertainment of the alleged balance of $443.81, the firm of Jones & Gilliam had been credited with the costs of forty-seven bales of cotton purchased by Jones & Gilliam of Heath & Co., at Carlisle, S. C., and that it was just afterwards learned that Jones & Gilliam had not paid for said forty-seven bales of cotton, although in possession of the funds of the plaintiff amply sufficient for that purpose. That the purchase price of the forty-seven bales of cotton and the balance of $443.81, when added together,

exceeded the sum of $1,000, which was the limit fixed in the contract of the defendant, whereby they guaranteed the good faith of the said W. F. Gilliam to the plaintiff.   That subsequently a judgment was obtained against the plaintiff, by Heath & Co., for the purchase price of said forty-seven bales of cotton, which judgment when recovered was for some $1.025.   That the plaintiff at once gave the defendant full notice of the shortage of said Jones & Gilliam of the exact sum of $443.81 in the one instance, and probable loss of value of the forty-seven bales of cotton.   This suit was commenced at once thereafter.   Defendant denies liability. After the trial had begun before Judge Buchanan and a jury, and the plaintiff had closed its testimony, on motion of defendant, the Judge granted a nonsuit.   The appeal is intended to allege error in such Circuit Judge in his ruling certain testimony inadmissible for incompetency, and also alleged errors in the grounds upon which such Judge based his order of nonsuit.

We will examine first the alleged errors in overruling the admissibility of certain testimony.   Any testimony offered in a cause must always relate directly or indirectly to the issues made by the pleadings.   It will be recalled that by the form of guaranty adopted by the defendant, it was proposed by it to indemnify the plaintiff against any loss arising from the fraud or dishonesty of W. F. Gilliam in his management of plaintiff's money intrusted to said Gilliam's hands with which to buy cotton for plaintiff, and by express agreement of said Gilliam in that connection, such money was to be kept separate and apart from any other funds.   And also that Gilliam would pay over on demand any unexpended moneys of the plaintiff.   It is thus evident that the intention of said Gilliam in his acts respecting this money must have been established before it could be said that Gilliam was guilty of fraud or dishonesty as to said funds.   A man cannot be found guilty of fraud or dishonesty in the absence of a criminal intent.   This being so, any testimony was competent which went to prove this criminal

intent.   Therefore, when plaintiff offered to prove the declarations and conduct of W. F. Gilliam in this connection, it was competent.   Otherwise, the defendant could never be said to be liable under its guaranty that Gilliam would not be guilty of fraud or dishonesty in his dealings with the plaintiff in the management of its money confided to him. When the witnesses, who were offered to prove W. F. Gilliam's declarations and admissions as to the use of this money, so offered to testify, it was error to refuse such testimony.   So, too, the testimony of Jones as to the absence from the ledger of Jones & Gilliam of any record in said ledger of these moneys, was also competent.   Under *Bank v. Jennings*, 38 S. C., 79, it was legitimate to show Gilliam had exclusive control.   These exceptions are in these words: "(a)  Declarations of W. F. Gilliam, which were intended to show character and extent of his shortage.   (See case, folios 41, 45, 52, 55, 149 to 152.)   (b)  Testimony of W. T. Jones as to what he knew of the disposition by W. F. Gilliam of money committed to his charge.   (See case, folios 111 to 116.)   (c)  The ledger of Jones & Gilliam, showing that there was no entry thereon of any account with Clifton Company, and further testimony of W. T. Jones as to what books he found, and what books were missing when he took charge of the business of the firm.   (See case, folios 138 to 140.)"   These exceptions are sustained.

As to the second, third, fourth and fifth exceptions, which are as follows: "II.  In holding that the Clifton Manufacturing Company was not entitled to recover in this case, for the reason that the contract as to buying cotton was with Jones & Gilliam, while the bond sued on was given by Gilliam alone, and in granting a nonsuit on the ground.   III.  In not holding that the bond given by W. F. Gilliam with the defendant as surety was a valid obligation, and that the plaintiff was entitled to recover thereon, although their original contract of employment was with both Jones and Gilliam; and in not refusing to grant a nonsuit.   IV.  In not holding that there was evidence here tend-

ing to show that the defendant contracted with plaintiff with knowledge that the plaintiff's contract of employment was with the firm of Jones & Gilliam, and that for this reason plaintiff was entitled to have the case go to the jury, and in not, therefore, refusing the motion for nonsuit.  V.  In not holding that, under the terms of the bond sued on, the defendant was and is estopped from taking the position that it was not bound for the default of Gilliam, even though the contract of employment was with both Jones and Gilliam, and not, therefore, refusing to grant the motion for nonsuit."  The question underlying these grounds of appeal is the real serious matter in the cause.  For, of course, if the liability of the guaranty by the defendant only affects the conduct of W. F. Gilliam as an individual, and not as a member of the firm of Jones & Gilliam, and there was no contract of the plaintiff with such W. F. Gilliam, as an individual, why the plaintiff runs a serious risk of losing his suit because he has no cause of action.  We must remember that this is not a suit against the firm of Jones & Gilliam, nor is it a prosecution of W. F. Gilliam on the sessions side of the Court.  The plaintiff seeks to hold the defendant to his contract of indemnity.  It seems to us that, under the allegations of the complaint and under plaintiff's testimony, he has a cause of action against the defendant upon which he had the right to invoke the verdict of a jury, for it appears from the testimony that on the 12th January, 1898, the plaintiff made a stringent and exhaustive contract (in writing) with the firm of Jones & Gilliam, to use such money as the plaintiff should furnish them in the purchase of cotton at Carlisle, a station in this State on the Southern Railway. By the terms of that contract, which was put in evidence, amongst other things, the firm of Jones & Gilliam bound themselves as a firm to certain duties, responsibilities and checks upon their conduct, while in the employ of the plaintiff.  It further appears from the testimony that the defendant, before, but at the time it made its contract, whereby it guaranteed the good faith of W. F. Gilliam, who was a

member of the firm of Jones & Gilliam, while buying cotton for the plaintiff, requested the plaintiff to exhibit to it, the defendant, the contract between plaintiff and W. F. Gilliam to purchase cotton for plaintiff (which contract contained a statement of the duties, responsibilities and checks upon such agents), and the plaintiff did exhibit to said defendant its written contract with Jones & Gilliam as such cotton buyers, by which exhibit the defendant was made acquainted with the persons and terms of the employment of such Jones & Gilliam as said cotton buyers; and in the very contract of guaranty there appears as follows in part of the same:

"Amount $1,000. Annual premium $7.50. Bond No. 7058. The United States Fidelity and Guaranty Company. Home office: corner Calvert and German streets, Baltimore, Md. Whereas, *W. F. Gilliam, Carlisle, S. C.*, hereinafter calling the 'Employe,' has been appointed *to the position of cotton buyer* in the service of the Clifton Manufacturing Company, of Clifton, S. C., hereinafter called the 'Employer,' and has been required to furnish a bond for his honesty in the performance of his duties in the said position. And whereas, the *employer* has delivered to the United States Fidelity and Guaranty Company, a corporation of the State of Maryland, hereinafter called the 'Company,' *a statement in writing relative to the duties, responsibilities and check to be used upon employe in said position and other matters.* Now, therefore, in consideration of the sum of seven, and 50-100 dollars, paid as a premium for the period from January 1st, 1898, to May 1st, 1898, at 12 o'clock noon, and *upon faith of the said statement as aforesaid by the employer,* it is hereby agreed and declared, that subject * * *" (italics ours). Thus showing that the defendant well knew how W. F. Gilliam was connected therewith; for he, the said W. F. Gilliam, signed the firm name of Jones & Gilliam in his own handwriting, per "W. F. Gilliam." That such testimony as this established facts upon which a jury and not the Judge should have passed. Besides, if only the liability of W. F. Gilliam under the contract was to be con-

sidered under the defendant's liability as a guarantor, then inasmuch as the testimony offered served to establish that to him as an individual a part of plaintiff's money was paid, this would entitle the plaintiff to go to the jury under the instructions of the Court as to the law. We do not regard the other grounds of appeal as needing any further consideration. Of course, we do not mean to hold that the facts testified to by plaintiff's witnesses are established—only that the jury should have considered them.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the action be remanded to that Court for a new trial.